Nunez v Nunez (2019 NY Slip Op 06571)





Nunez v Nunez


2019 NY Slip Op 06571


Decided on September 17, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 17, 2019

Friedman, J.P., Tom, Kapnick, Kahn, JJ.


9570 152329/15

[*1]Reinaldo Nunez, Plaintiff-Respondent,
v
Germania Nunez, Defendant-Respondent, Danny Budden, at el., Defendants-Appellants.


Cozen O'Connor, New York (Kristin Keehan of counsel), for appellants.
Mitchell Dranow, Sea Cliff, for Reinaldo Nunez, respondent.
O'Connor, McGuinness, Conte Doyle, Oleson, Watson & Loftus, Putnam Valley (Montgomery Lee Effinger of counsel), for Germania Nunez, respondent.



Order, Supreme Court, New York County (Adam Silvera, J.), entered December 10, 2018, which, in this action for personal injuries sustained in a motor vehicle accident, denied the motion of defendants Danny Budden, Clarke Road Transport Inc., and Ryder Truck Rental Canada (collectively, the Budden defendants) for summary judgment dismissing the complaint as against them, reversed, on the law, without costs, and the motion granted.
The record establishes, as a matter of law, that the subject accident occurred when the left front of the car being driven in the right driving lane by defendant Germania Nunez (in which plaintiff was a passenger) came into contact with the right rear tire of the truck being driven by defendant Budden in the left driving lane, indicating that the Nunez car struck the Budden truck from behind. Furthermore, the photographs in the record demonstrate that the front of the Nunez car was impacted, not the side of the car, as would have been the case had the collision occurred in the manner described by plaintiff. Accordingly, Budden was not at fault for the collision, and the motion by the Budden defendants for summary judgment dismissing the complaint as against them should have been granted.
All concur except Tom, J. who dissents in a memorandum as follows:




TOM, J. (dissenting)


Based on the photographic evidence in the record as well as discrepancies between the testimony of plaintiff and the defendant truck driver, I would conclude that a trial is necessary to determine the respective liabilities of the parties. In this regard, it is my position that even if the facts adduced at trial do not necessarily completely exonerate the defendant driver of the car, this court cannot, at this juncture, exclude proximate causation and thus comparative negligence on the part of the truck driver (Lopez v Reyes-Flores, 52 AD3d 785 [2d Dept 2008]).
The issue to be determined is whether the car hit the truck, or whether the rear of the truck, not having completely entered the left lane yet, struck the car after the car had come to a stop in the middle right travel lane (of traffic). Plaintiff was the passenger in the car that came into contact with the truck. Defendant Budden was the driver of the tractor-trailer.
The undisputed record evidence reflects that the car was pulling out of a parking space in the far-right parking lane towards the two southbound driving lanes on Broadway, which had three lanes in each direction at that location, between 180th and 181st Street, closer to 181st [*2]Street. There were two southbound travel lanes (left and right travel lanes) and a parking lane to the far right.
The truck made a right turn from 181st Street into the southbound traffic lanes on Broadway. An important consideration is the turning radius of this very long trailer, in that as the tractor moved forward in the left travel lane, completing its wide turn, its middle to rear portion pivoting on the "wheel" connecting the trailer to the tractor in the front and on the trailer's rear wheels as they turned on 181st street would progressively advance on the right traffic lane until, after a distance, the tractor-trailer could entirely straighten out in the left traffic lane.
Plaintiff testified in his deposition that Broadway is straight in this vicinity, traffic was light, and the car driver pulled out of her parking spot at no more than five miles per hour, and then came to a stop in the right travel lane. Plaintiff had not seen the truck approaching, but one may surmise that as the passenger it was not unusual that he would not have looked to the car's rear. He testified that he was unaware of the truck's presence until the back of the truck struck the front left corner of the car, which "took the whole bumper and fender with it." He also testified that the impact also knocked the car from a position where it had been angled out into the middle lane to a position where it came to rest facing south. Plaintiff testified that the car had been stopped for about 10 seconds in the right travel lane, waiting for the truck to pass, when the car was hit as the truck followed through on its turn. The defendant driver of the car testified that as she went to pull out of her parking spot and observing the approaching truck, she braked and had thus stopped for about 7 to 10 seconds to allow the truck to pass when her car was struck.
Defendant Budden testified that the truck, a Freightliner, consisted of a tractor which had 10 wheels and a trailer which had 8 wheels. He described the "box" attached to the "cabin" as 53 feet long, with a "fifth wheel" connecting the two. He testified that as the tractor goes into a turn, the trailer will pivot by means of this wheel attachment. Budden testified that a right turn on a tractor-trailer requires the tractor to "swing wide. . .[,] you need a good amount of space to make a complete wide right turn." As the vehicle goes into a right turn, he testified, the trailer wheels will pass through the right hand lane for about a car length before falling behind the tractor. Budden testified that while turning he directed the tractor as far left as possible so as to afford him the "swing" that he needed for the trailer. He testified that he remained in first gear proceeding at about two miles per hour as he made his turn into the "inside lane, closest to the center lane." When he had been in the left lane for about two car lengths, Budden testified that the right lane seemed clear of vehicles, but that he had been looking straight ahead and that there are blind spots on the right side where the side view mirror will not pick up any visual, including a space about 10 feet behind the doors on the "very back" side of the box car. He felt a light impact as the truck was hit, and within five or six seconds he pulled to a stop. Budden testified that from the position of the car he concluded that it had driven out from a parking spot at the curb and hit the trailer at a point when the entire tractor was already in the left travel lane and 60 feet beyond the intersection from which he had turned. This portion of Budden's testimony is in stark contrast to plaintiff's testimony as to how this accident occurred. Budden recalled that the car, after the accident, was positioned "perpendicular" across the middle "right" lane and that the front left side of the car was "smashed in," with the bumper, still attached, "pushed in." However, this is contradicted by the photographic evidence.
The point of impact apparently was at the left rear tire on the truck, as depicted in the photos. The photos also indicate that the car's front left fender and bumper, rather than having been pushed into the car's frame as might have occurred if the car ran into the truck, showed that it has been pulled out as might be consistent with the rear of the truck, not yet entirely clear of the middle or right traffic lane, clipping that part of the stopped car and pulling out the left part of its fender. These photos seem to support plaintiff's version as to how the accident occurred. Although the majority views the photos as depicting the front of the car as having been impacted rather than the side of the car, a jury could reasonably find the photos not to be so unequivocal. To the contrary, a jury could reasonably find the impact to have been consistent with the manner in which I describe the photos, above, which quintessentially presents a material unresolved factual issue. Further, the photos in the record seem to locate the car straddling the middle "right" [*3]lane and, in part, the far right parking lane, at what seems to be approximately a 45 degree angle somewhat facing south, which seems to be inconsistent with both parties' descriptions.
The uncertainties and inconsistencies in the record, including the testimony of plaintiff and defendant Budden, and the photographs as to how this accident occurred preclude a summary disposition of the dispute and require a fuller development of the evidence at trial.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 17, 2019
CLERK